```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION
```

```
UNITED STATES OF AMERICA      :
                              :       CRIMINAL ACTION
           v.                 :
                              :       NO. 1:04-CR-251-JEC-ECS
MICHAEL A. DIAZ               :
```

**REPORT AND RECOMMENDATION**
<u>**OF THE MAGISTRATE JUDGE**</u>

**I.**
<u>**Introduction**</u>

The above matter is before the Court on the government's "Motion in Limine to Exclude Defendant's Insanity Defense or Other Evidence of Diminished Capacity at Trial." [Doc. 231]. In my order of September 11, 2013, the undersigned set this matter down for a hearing to give Defendant an opportunity to proffer evidence in support of his insanity defense. The matter came on for hearing on the motion on October 7, 2013. The Court heard argument and permitted Defendant to make a proffer regarding his defense, both at the hearing with the government present and *in camera* in a closed hearing without the government.[1]

---

[1] The hearing was transcribed for the Court, including portions conducted ex parte, but the transcript has not been filed. References to the transcript will be made as follows: "[T. ___]."

## II.
## Argument and Proffer

The government argues that Defendant cannot "meet the threshold for a permissible insanity defense because he cannot show that he suffered from a mental disease or defect at the time of the alleged crime that impacted his ability to appreciate the wrongfulness of his conduct."[2] [Doc. 231 at 1]. The government argues that Defendant's expert testimony from Dr. Tracey Marks is insufficient because it does not establish that Defendant's mental disease was active at the time of the charged offenses. [Id. at 7]. The government points out that Defendant's expert's report does not expressly state that defendant's mental disease was active at the time he committed the charged offense. [Id.]. The government also submits that the expert's report "does not explain how the Defendant's schizophrenia (or other mental disease) impaired his ability to appreciate the wrongfulness of his actions." [Id. at 8].

In response, the Defendant argues that the motion *in limine* should be denied, based upon his expert's statement in her report "that [Defendant], because of a mental disease, was not able to appreciate the wrongfulness of the act(s) for which he is accused."

---

[2] The government also argues that Defendant is not entitled to a defense of diminished capacity because he is charged with general intent crimes for which diminished capacity is inadmissible. Defendant responded that he is not offering a defense of diminished capacity, so that this part of the government's motion is **MOOT**.

2

[Doc. 232 at 1] (quoting Marks's Report at 4 [Exh. D-1]). At the hearing, Defendant's counsel proffered that Dr. Marks' testimony at trial would be that Defendant at the time of the offenses was unable to appreciate the nature and wrongfulness of his actions. Dr. Marks did not testify, however, and Defendant did not proffer, in detail, what her full testimony would be.

In further support of the defense, Defendant's counsel pointed to certain evidence as supportive of the applicability of the defense. In particular, Defendant pointed to the fact that, when Defendant was convicted in 2000 in Louisiana on a felon-in-possession charge, he was ordered to submit to mental health treatment as a condition of his supervised release. He notes that Defendant was precluded from eligibility for a community correctional facility because of mental health conditions. Defendant also pointed to the order entered by Judge Martin of this Court on January 17, 2006, in which the findings of Dr. Michael Hilton are described. In particular, he points to Dr. Hilton's report in February of 2005. This report is cited by the Eleventh Circuit in its opinion in January 2011 affirming involuntary medication of Defendant. United States v. Diaz, 630 F.3d 1314, 1317, 1328 (11th Cir. 2011). In its opinion, the Court notes that Defendant related to Dr. Hilton how, at age 13, "Michael Anthony Diaz was vanquished" and "subsequently took on a new identity of 'MAD-One.'" Id. at 1317.

3

Then, at age 23, Diaz changed identities again and "Jahl" took over "as a result of spiritual growth." Id. Jahl was then vanquished and "Ichaelimaye" or "Iko" was "re-earthed." Id.

Defendant's counsel also pointed to certain conduct at the time of the offenses in April 2004, which he contends would indicate that Defendant did not appreciate the wrongfulness of his conduct. Counsel also pointed to the circumstances surrounding Defendant's arrest on the bank robbery charges in April of 2004 in which he allegedly made statements that suggested mental issues — especially his claim that "noxious fumes" had been affecting him.

## III.
## Discussion and Analysis

The Insanity Defense Reform Act of 1984, 18 U.S.C. § 17 ("IDRA"), codified the insanity defense as follows:

> (a) Affirmative defense.--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
>
> (b) Burden of proof.--The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Under the IDRA, the burden of proof shifts to the Defendant to establish the defense by clear and convincing evidence. § 17(b). Furthermore, under Rule 12.2(a) of the Federal Rules of Criminal

4

Procedure, counsel for Defendant must notify the government, in writing, of his intent to present an insanity defense within certain time limits. Defendant filed his notice on March 20, 2013, [Doc. 216], and the government is not challenging the timeliness or sufficiency of notice under Rule 12.2(a).

In evaluating the government's motion to exclude this defense, the central issues are whether or not Defendant's expert testimony would be admitted at trial and whether that testimony, along with any other admissible evidence, would be sufficient to make a threshold showing of the elements of the defense sufficient to warrant a jury instruction. These elements are whether Defendant suffered from a severe mental disease or defect and whether such disease rendered him unable at the time of the offenses to appreciate the nature and quality of the wrongfulness of his acts. "[W]here the issue of insanity has otherwise been properly raised, a federal criminal defendant is due a jury instruction on insanity when the evidence would allow a reasonable jury to find that insanity has been shown with convincing clarity." United States v. Owens, 854 F.2d 432, 435 (11th Cir. 1988).[3]

---

[3] "If evidence would permit the jury to find to a high probability that defendant was insane, an insanity instruction is required." Owens, 854 F.2d at 436.

5

On the first issue — whether Defendant suffered from a severe mental disease or defect — there appears to be little dispute that Defendant has suffered from schizophrenia diagnosed as early as February of 2005 by Dr. Michael Hilton. See Diaz, 630 F.3d at 1317. Yet, despite this diagnosis, Judge Martin found Defendant to be competent to stand trial in 2006. Id. at 1318. Later mental competency proceedings, as discussed in the opinion of the Eleventh Circuit, showed that Defendant was again diagnosed as mentally ill in 2008 and found incompetent to stand trial in May of 2009. Id. Defendant was then re-admitted for treatment and ultimately came before the District Court for a Sell hearing[4] to determine if he could be involuntarily medicated. Id. at 1318-19. At that hearing, Diaz gave evidence along with doctors from the Federal Medical Center that supported the District Court's finding that involuntary medication was warranted due to Defendant's mental defect in the nature of chronic paranoid schizophrenia. Id. at 1320-1322. Ultimately, the district judge authorized forced medication. Id. at 1329. This determination was affirmed by the Eleventh Circuit in January of 2011. Id. at 1336.

As for the second element — whether such disease or defect rendered Defendant unable at the time of the offenses (in this case

---

[4]   Sell v. United States, 539 U.S. 166, 123 S. Ct. 2174 (2003).

AO 72A
(Rev.8/82)

in 2004) to appreciate the nature or quality or the wrongfulness of his conduct — the evidence is not convincing or clear. First, with regard to the expert testimony of Dr. Marks, the undersigned concludes that this testimony on the pertinent, and ultimate, issue is not in a form, either in the report or as proffered by counsel at the hearing, that would be admissible at trial. In that regard, Rule 704(b) of the Federal Rules of Evidence provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Thus, Rule 704(b) does not permit an expert to testify to the "ultimate issue" in an insanity defense. United States v. Manley, 893 F.2d 1221, 1223 (11th Cir. 1990). "Congress designed Rule 704(b) to insure that juries, not experts, make the final determination on the issue of insanity." Id. Accordingly, Dr. Marks's testimony on the ultimate issue, specifically the conclusion that Defendant was unable to appreciate the wrongfulness of his acts at the time of the offense, would not be admissible in that form.

Other forms of expert testimony would be admissible, however, going to the issue. "Expert testimony concerning the nature of a defendant's mental disease or defect, including its typical effect on a person's mental state is admissible." United States v. Thigpen, 4 F.3d 1573, 1580 (11th Cir. 1993). "Psychiatric testimony may

7

include the expert's diagnosis, the characteristics of the particular mental disease or defect, and the expert's opinion as to the defendant's mental state and motivation at the time of the alleged crime." Manley, 893 F.2d at 1223. And Dr. Marks did offer certain admissible testimony in her report that is somewhat supportive of the defense, stating "Mr. Diaz maintains many of the delusional beliefs that he presented with at the time of his arrest. Several clinicians have opined that he is psychotic and have documented his ongoing delusions. This strongly suggests that Mr. Diaz's symptoms are genuine and persistent." Marks's Report at 4 [Exh. D-1]. This testimony, however, is insufficient to establish by clear and convincing evidence that Defendant was insane at the time of the offenses in 2004.

Other testimony supports the proposition that Defendant was suffering from the same severe schizophrenic defect at or around the time of the offenses. The opinion of Dr. Michael Hilton, described above, was rendered in February of 2005, approximately a year after the offenses were allegedly committed by Mr. Diaz.[5] Along similar lines, Judge Martin in her order of October 13, 2009, characterized testimony given before her regarding the severity of Defendant's mental illness, concluding that Defendant should be involuntarily

---

[5] Defendant did not, however, tender Dr. Hilton's report at the proffer hearing.

medicated in order to restore him to competency. [Doc. 164 at 33]. In reaching this conclusion, however, it is noteworthy that Judge Martin found that "[t]here is little evidence to suggest that the violent criminal acts with which Mr. Diaz is charged were caused by his mental illness. If the allegations of the indictment are true, Mr. Diaz was a dangerous person five years ago, at which time his mental illness was not so extreme as to preclude his active participation in his trial on the offenses charged." [Id. at 18].

Having considered the evidence proffered by Defendant on the issue of the insanity defense, I come to the conclusion that Defendant has not proffered sufficient admissible evidence to warrant submission of the defense to the jury. The expert testimony of Dr. Marks, as proffered, would be inadmissible on the ultimate issue. And, without admissible expert testimony going to the issues, there is simply insufficient evidence from which a jury could find that, at the time of the charged bank robberies, Defendant was suffering from schizophrenia, and, assuming he was schizophrenic, that he did not appreciate the wrongfulness of his conduct when he brandished a firearm, demanded $100,000, and later fired a weapon at police and at a bystander, all in the process of committing an armed bank robbery. [Id. at 20].

Defendant's counsel points to the fact that when Defendant was arrested in 2004 he was homeless and spoke about noxious fumes

9

affecting him. [T. 37]. Defendant's counsel also points to the fact that in the second charged robbery, assuming Defendant committed it, Defendant apparently would have failed to learn from the first robbery to demand that he be given no dye packs and also failed to try to conceal himself. Counsel argues that this would be evidence that he did not appreciate the fact that he was doing anything wrong when he entered the bank with a gun and demanded money. [T. 18]. This evidence does not, in my view, however, carry the burden of "convincing clarity" to justify a charge on the insanity defense. See Owens, 854 F.2d at 435-36 (11th Cir. 1988).

There is no expert opinion or other medical records pre-dating the robberies that show any diagnosis of severe mental illness, although Defendant's counsel alludes to the fact that Defendant was denied community correctional facility status while on supervised release for the felon-in-possession conviction in Louisiana, several years prior to these offenses, allegedly due to mental health issues. [T. 3-4]. Standing alone, however, such evidence is not convincingly probative on the ultimate issue of insanity at the time of these offenses.

## IV.
## Conclusion

In summary, I conclude on this record that, without any substantial, admissible expert testimony, and with scant facts going

10

to the issue of whether he was suffering from severe defect at the time of the offenses, a charge on the defense would be unwarranted and the defense of insanity should be excluded. But, because there is substantial evidence of Defendant's severe mental illness that, over a span of years, has resulted in findings that he was incompetent to stand trial, and was then subject to forced medication to render him competent, I recommend that Defendant be allowed an additional opportunity to submit any supplemental evidence he might produce to support the admissibility and probity of his expert's opinion on the critical issues, any other medical evidence that might be admissible, and any other factual evidence that would go to prove that Defendant was insane <u>at the time of the commission of the offenses charged</u>. In the event that Defendant cannot remedy the deficiencies in the evidence as the record now stands, evidence of the defense should be barred at trial.  This additional proffer should be permitted to be made to the undersigned, *in camera*, or under seal, outside the presence of the government, so as to protect Defendant's defense and trial strategy.

**SO REPORTED and RECOMMENDED**, this 6th day of December, 2013.

s/ <u>*E. Clayton Scofield III*</u><br>
E. CLAYTON SCOFIELD III<br>
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)