IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA          :

             v.                   :          CRIMINAL ACTION

MICHAEL A. DIAZ                   :          NO. 1:04-CR-251-JEC-ECS


**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

**I.**
**Background**

The above matter is before the Court for a determination as to the competency of Defendant Michael Diaz to stand trial, pursuant to 18 U.S.C. § 4241, and on the government's motion for involuntary medication of Mr. Diaz, pursuant to Sell v. United States, 539 U.S. 166, 123 S. Ct. 2174 (2003). [Doc. 227]. In addressing the government's motion for involuntary medication, the Court ordered Mr. Diaz to be examined by a psychiatrist to determine his present competency to stand trial. [Doc. 243]. Mr. Diaz was examined by Dr. Julie Rand Dorney and, upon the filing of her report, the Court set the matter down for a hearing on competency and involuntary medication. [Doc. 259]. The matter came on for hearing on March 31, 2014, and the Court heard evidence and argument on the issues. [Doc. 261]. The parties have filed post-hearing briefs, [Docs. 262, 263], the transcript has been filed, [Doc. 264], and the matter is ready

for the issuance of a Report and Recommendation to the district judge.

## II.
## History

This case has a lengthy history and chronology dating back to 2004. See United States v. Diaz, 630 F.3d 1314 (11th Cir. 2011). The history of the case to date is as follows, derived from the recitation of the facts in the decision of the court of appeals and updated from the record in this Court after remand by the court of appeals:

**A. First Competency Hearing and Trial**

In July 2004, a superseding indictment charged Mr. Diaz with: (1) armed bank robbery on January 27, 2004, in violation of 18 U.S.C. § 2113(a) and (d) ("Count 1"); (2) carrying and using a firearm in connection with a crime of violence — i.e., armed bank robbery, as charged in Count 1 — in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(A)(iii) ("Count 2"); (3) another armed bank robbery on April 8, 2004, in violation of 18 U.S.C. § 2113(a) and (d) ("Count 3"); (4) carrying and using a firearm in connection with a crime of violence — i.e., armed bank robbery, as charged in Count 3 — in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(A)(iii) ("Count 4"); and (5) possession of a firearm as a

2

convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) ("Count 5"). [Doc. 18]. See Diaz, 630 F.3d at 1317.

On March 7, 2005, the district court ordered the Bureau of Prisons ("BOP") to conduct a psychiatric examination of Mr. Diaz to determine his competency to stand trial. [Doc. 44]. From April 4 to May 4, 2005, and again from November 14, 2005 to January 3, 2006, Mr. Diaz was evaluated by Dr. Jorge Luis of the Federal Detention Center in Miami, Florida ("FDC Miami"). After conducting extensive interviews with Mr. Diaz and administering several psychological tests, Dr. Luis concluded that Mr. Diaz was competent to stand trial. Diaz, 630 F.3d at 1317.

On February 23, 2005, at the request of Mr. Diaz's counsel, Mr. Diaz was evaluated by Michael Hilton, M.D., a psychiatrist. Dr. Hilton's report indicated that there was limited information regarding Mr. Diaz's previous mental health treatment. During his interview, Mr. Diaz provided Dr. Hilton with an explanation of his experiences beginning at age 13, whereby "Michael Anthony Diaz was vanquished" and "subsequently took on a new identity of 'MAD-one.'" At age 23, Mr. Diaz changed identities again and "JahI" took over "as a result of spiritual growth." JahI was then vanquished and "Ichaelimaye," or "Iko," was "re-earthed." Mr. Diaz later became "Ineyah Imaye," or "Yah," and then later "Ieh" was "re-earthed." Dr. Hilton noted that Mr. Diaz's "conversation flow is just about

3

impossible to follow," determined that Mr. Diaz was suffering from "undifferentiated schizophrenia," and opined that he was not competent to stand trial. Id.

In October 2005, the district court conducted a hearing at which both Dr. Luis and Dr. Hilton testified. [Doc. 58]. The district court found Mr. Diaz competent to stand trial. Mr. Diaz later moved to dismiss his attorney and proceed pro se. The district court granted Mr. Diaz's motion, but ordered that his attorney remain as stand-by counsel during the trial. Diaz, 630 F.3d at 1317-18.

In a March 2006 bench trial, Mr. Diaz represented himself. The district court found Mr. Diaz guilty of all five counts in the superseding indictment and sentenced him to a term of 584 months' imprisonment. [Docs. 109, 117]. Mr. Diaz appealed. In August 2008, the court of appeals concluded that Mr. Diaz did not knowingly waive his right to a jury trial, and vacated his convictions as to all five counts. Diaz, 630 F.3d at 1318; United States v. Diaz, 540 F.3d 1316, 1323 (11th Cir. 2008) (per curiam).

**B. Second Competency Hearing**

At some point Mr. Diaz was placed at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). The staff at USP Lewisburg referred Mr. Diaz to a telepsychiatry clinic for a psychiatric consultation to determine whether he suffered from

4

mental illness and would benefit from medication. On July 24, 2008, Dr. James K. Wolfson, located at the Mental Health Evaluation Unit at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri ("Springfield medical center"), conducted a telepsychiatric evaluation of Mr. Diaz. Dr. Wolfson concluded that Mr. Diaz was psychotic, substantially impaired, and should take antipsychotic medication. Mr. Diaz refused to take medication voluntarily. Dr. Wolfson opined that Mr. Diaz would not meet the criteria for involuntary medication, and, therefore, did not prescribe medication for him. Diaz, 630 F.3d at 1318.

On December 31, 2008, Mr. Diaz was admitted to Springfield medical center. From December 31, 2008 to January 31, 2009, Mr. Diaz was evaluated by Dr. Christina Pietz, a forensic psychologist at Springfield medical center. Dr. Pietz's forensic report, dated February 3, 2009, stated that Mr. Diaz refused to participate in all clinical interviews, refused to complete psychological testing, and refused to answer any questions about his background. Id.

On May 6, 2009, the district court conducted a second competency hearing at which Dr. Pietz testified. In a written order, the Court found that Mr. Diaz was incompetent to stand trial. The Court's order directed that (1) Mr. Diaz be committed to the custody of the U.S. Attorney General and (2) the Attorney General hospitalize Mr. Diaz for a maximum period of four months to

5

determine whether there was a substantial probability that, in the foreseeable future, he could attain the capacity to stand trial. The court recommended that Mr. Diaz be returned to Springfield medical center so that he could have continuity of treatment and surroundings. [Doc. 154]; <u>Diaz</u>, 630 F.3d at 1318.

**C. Mr. Diaz's Re-Admission to Springfield Medical Center**

On May 21, 2009, Mr. Diaz was re-admitted to Springfield medical center. On May 27, 2009, he received advance written notice that a Due Process Involuntary Medication Hearing would be held on June 3, 2009. After a hearing, Dr. Carlos Tomelleri concluded that he could not approve involuntary medication because Mr. Diaz was not likely to cause harm to himself or others. Dr. Tomelleri's report stated that: (1) Mr. Diaz said that he was not mentally ill and "did not wish to consider treatment with psychotropic medication"; (2) since Mr. Diaz's admission to Springfield medical center, Mr. Diaz "has refused psychological testing, [and] has refused to attend required orientation proceedings"; and (3) psychotherapy and similar options would be futile. Dr. Tomelleri's report recommended a treatment of psychotropic medication, which would have a "substantial probability" of restoring Mr. Diaz to competency to proceed with his legal case. However, given that Mr. Diaz did not pose a danger to himself or to others, the BOP could not

6

involuntarily medicate Mr. Diaz without a court order. Id. at 1318-19.

**D. The First Sell Hearing.**

The district court next scheduled a hearing pursuant to the Supreme Court's decision in Sell v. United States, 539 U.S. 166, 123 S. Ct. 2174 (2003), which addressed involuntary medication for the sole purpose of rendering a defendant competent to stand trial. [Doc. 160]. Sell laid out four standards the government must satisfy for involuntary medication to render a defendant competent to stand trial: (1) important government interests must be at stake, (2) involuntary medication must significantly further the state interests in assuring a fair and timely trial, (3) involuntary medication must be necessary to further the state interests, and (4) administration of the medication must be "medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." Id. at 180-81, 123 S.Ct. at 2184-85.

At the hearing, evidence was taken from Dr. Christina Pietz, Mr. Diaz's primary clinician at Springfield, and Dr. Robert Sarrazin, Chief of Psychiatry at Springfield, who testified in favor of the appropriateness of involuntary medication in Mr. Diaz's case, and addressed the four Sell factors as they applied to Mr. Diaz. Mr. Diaz was also permitte to comment. Diaz, 630 F.3d at 1320-1329.

7

**D. District Court's Order**

On October 13, 2009, the district judge, Judge Beverly Martin, granted the government's request to medicate Mr. Diaz involuntarily. [Doc. 164]. After assessing all the <u>Sell</u> factors in the order, the district court directed Springfield medical center to medicate Mr. Diaz forcibly in accordance with the treatment plan testified to by Dr. Robert Sarrazin at the hearing and prescribed in the district court's opinion, but only after "first seeking to obtain Mr. Diaz's voluntary participation with any treatment." [<u>Id.</u> at 33].

**E. Appeal to the Circuit Court**

Mr. Diaz appealed the district court order to the Eleventh Circuit Court of Appeals, contending that the government failed to meet its burden as to the second and third <u>Sell</u> factors. The circuit court held that, given the ample evidence presented by the government, the district court did not clearly err in concluding that involuntary medication was necessary to render Mr. Diaz competent to stand trial. <u>Diaz</u>, 630 F.3d at 1335-36.

**F. Remand and Mr. Diaz's Third Admission**

On remand, after affirmance, the district court set the matter down for a status conference, but the case remained stayed until December 9, 2011, while a petition for certiorari to the Supreme Court was pending. On December 9, 2011, after the petition was denied, the district court lifted the stay of its October 13, 2009,

8

order and directed that the order be given full force and effect. [Doc. 200]. Mr. Diaz was then re-committed to the custody of the Bureau of Prisons at the Federal Medical Center in Springfield, Missouri, for hospitalization and treatment. The treatment was to include the administration of medication, involuntarily if necessary. [Id. at 2]. On June 11, 2012, the Warden at Springfield certified that Mr. Diaz was then competent to stand trial. [Doc. 208]. The certificate was accompanied by a Forensic Report dated June 11, 2012, by Christina A. Pietz, Ph.D., Staff Psychologist, who opined, among other things, that Mr. Diaz's mental illness was "in remission because of the medication," but that "if this medication is changed or discontinued, he could quickly decompensate and no longer be competent to stand trial." See Pietz Rpt. at 16 [Doc. 208].

**G. Competency Hearing, May 9, 2013**

Thereafter, after Mr. Diaz was returned to custody in this district, counsel for Mr. Diaz requested another independent psychiatric examination, [Doc. 209], which was ordered, [Doc. 210], and Mr. Diaz was examined by Dr. Tracey Marks, whose report was issued on February 26, 2013. See Marks Rpt., Def. Ex. D1 [Doc. 221-3]. The Court then set the matter down for a competency hearing on May 9, 2013, and, after a hearing, and based upon the uncontradicted report of Dr. Marks, the Court found Mr. Diaz competent to stand

9

trial and certified the case as ready. [Doc. 222]. The Court was not advised at that time that Mr. Diaz had not been receiving medication as prescribed at the federal medical center since his return to the district.

## I. Government Motion for Involuntary Medication

On May 27, 2013, the government filed a motion for an order authorizing involuntary medication, asserting that Mr. Diaz's medication had been erroneously discontinued after he was returned to this district from the Springfield medical center. The government argued that Mr. Diaz needed to be medicated and advised that he refused to take the medication. [Doc. 227].

The Court set the government's motion down for hearing, [Doc. 235], and, on September 10, 2013, the motion was heard. [Doc. 237]. After the hearing, the Court ordered that Mr. Diaz be examined again to determine his present competency to stand trial. [Doc. 243]. Mr. Diaz was thereafter examined by Dr. Julie Rand Dorney, a psychiatrist. Dr. Dorney filed her report, dated February 26, 2014, on March 3, 2014. See Dorney Rpt., Gov. Ex. 2.

## J. The Second Sell hearing

After the filing of Dr. Dorney's report, the Court set the case down for a hearing on March 31, 2014, to address competency under 18 U.S.C. § 4241 and involuntary medication under Sell v. United States. [Doc. 259]. The hearing was held, evidence received, and a

10

briefing schedule set. [Doc. 261]. The transcript of the hearing was filed of record May 22, 2014. [Doc. 264].

## III.
## Analysis

### A. Competency

The first issue to be addressed is whether Mr. Diaz is presently competent to stand trial on the charges in the superceding indictment. This issue was presented at the hearing on March 31, 2014, and evidence was taken. Stated more precisely, the issue for determination under 18 U.S.C. § 4241(d) is whether the record demonstrates "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." If so, then Mr. Diaz shall be committed to the custody of the Attorney General and hospitalized for treatment in a suitable facility. § 4241(d).

In addressing the issue of competency to stand trial, "the test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960) (internal

11

quotation marks omitted); <u>see</u> <u>also</u> <u>James v. Singletary</u>, 957 F.2d 1562, 1574 (11th Cir. 1992). "The competency inquiry, then, is a functional one. It focuses on the criminal defendant's capacity to contribute sufficiently to his own defense to allow a fair trial and, ultimately, serves to protect both the defendant and society against erroneous convictions." <u>Watts v. Singletary</u>, 87 F.3d 1282, 1286 (11th Cir. 1996).

> Competency is contextual. A criminal defendant represented by counsel generally has limited responsibilities in conducting his defense: primarily, recognizing and relating relevant information to counsel and making the few trial-related decisions reserved for defendants (i.e., whether to plead guilty, whether to request a jury trial, whether to be present at trial, and whether to testify).

<u>Id.</u> at 1288 (footnotes omitted). "The competency determination, because it looks to the capacity of a particular defendant to play a fact-specific role at trial, requires case-by-case assessment." <u>Id.</u> at 1289; <u>see</u> <u>generally</u> 1A Charles Alan Wright et al, <u>Federal Practice and Procedure</u> § 208 (4th ed. 2014).

As narrated above, the present case has an extensive history relative to the issue of Mr. Diaz's competency. Mr. Diaz was declared incompetent for trial by Judge Martin in May of 2009 and re-admitted to Springfield medical center. Then, in September of 2009, the first <u>Sell</u> hearing was conducted and Mr. Diaz was ordered, on October 13, 2009, to be medicated, involuntarily if necessary, in order to render him competent to stand trial. When he was discharged

12

from Springfield as competent in June of 2012, Dr. Christine Pietz, the evaluating staff psychologist, opined that Mr. Diaz's mental illness was in remission as a result of his medication and that his medication should not be changed or discontinued, lest he decompensate and deteriorate into incompetency again. See [Doc. 208].

His medication was not continued, however, after he was returned to this district. And, while another psychiatrist, Dr. Tracey Marks, examined him and concluded that he was competent in February of 2013, and the Court thereafter found him competent, after a hearing, on May 10, 2013, the government nonetheless moved on May 27, 2013, to re-commence involuntary medication and for another competency hearing.

Since his return to the district, Mr. Diaz has appeared before the Court on at least three occasions for hearings and has sent hand written correspondence directly to the Court regarding his case, despite his representation by appointed counsel. This correspondence and the Court's observation of and interaction with Mr. Diaz at the hearings supports the conclusion that Mr. Diaz has decompensated and that it is unlikely that he can consult with his lawyer with an appropriate degree of rational understanding so as to be able to assist adequately in his own defense. His colloquy with the Court at the hearings and in the correspondence suggests both paranoid

13

thinking about the roles of the Court and his counsel in his case and a level of delusional and disorganized thinking in general. See, in particular, Defendant's Exhibits 1 and 2, both of which are signed on behalf of Mr. Diaz by an alter ego, "A St. Da Iz Ngas," sometimes also identified as "Interpleader In Personam." See also [T. 45-47, 48-51, 51-52].

In addition to the above personal observations by the Court, Mr. Diaz has also been examined most recently by Dr. Julie Rand Dorney on two occasions, resulting in her expert opinion that Mr. Diaz is not competent to stand trial at this time. [T. 21]; see also Dorney Rpt., Gov. Ex. 2 at 8. In her testimony, Dr. Dorney found that Mr. Diaz suffers from paranoid thinking, [T. 17]; that he becomes very disorganized in his thinking when asked questions, [Id.]; and that he uses "neologisms" in his speech and is "a little bizarre in his thinking with the words." [T. 18]. She observed in her report that "Mr. Diaz is currently delusional with mistrust towards his attorney and the legal system, in general." Dorney Rpt., Gov. Ex. 2 at 8. She diagnosed him as suffering from schizophrenia, a chronic thought disorder and mental illness, characterized by disorganized and paranoid delusional thinking. [T. 18-19]. The significance of this diagnosis is that this mental condition

14

"impacts his ability to work with his lawyer on his case, to assist in his own defense." [T. 20].[1]

Counsel for Mr. Diaz, in response to the motion, submits that he is "apparently able to work with Mr. Diaz" and that therefore there is no basis to forcibly medicate him. [Doc. 263 at 2]. Counsel's argument is based in substantial part, it appears, upon the proposition that "he needs very little assistance from Mr. Diaz to try this case" because, unfortunately, the only available defense is an insanity defense. [Id.]. But this argument ignores the evidence that indicates paranoid distrust by Mr. Diaz not only of his own counsel – which has been demonstrated in his interviews with Dr. Dorney and from things he has said in the courtroom and in his letters – but of the Court system itself. Mr. Diaz in his present condition does not acknowledge that he suffers from any mental illness and does not appear to concede that he was insane at the time of these offenses. To this extent he certainly is not capable of assisting his counsel with an insanity defense that he does not support.

---

[1] The Court observes that even though Dr. Tracey Marks in February of 2103 found Mr. Diaz to be competent to be tried, she nevertheless found that "Mr. Diaz maintains many of the delusional beliefs that he presented with at the time of his arrest." See Marks Rpt., Def. Ex. D1 at 4[Doc. 221-3].

Upon consideration of all the evidence presented, as well as the Court's first hand interactions with Mr. Diaz, both in the Courtroom and through correspondence received from Mr. Diaz, the undersigned concludes by a preponderance of the evidence that Mr. Diaz is not at this time competent to stand trial, in that he is presently suffering from a mental illness that renders him unable to assist properly in his defense. The ramifications of this finding will be discussed further in this order in addressing appropriate further relief, after I have addressed the issue of involuntary medication under Sell.

**B. The Sell Analysis**

1. Legal Standards

In Sell, the Supreme Court indicated that "an individual has a constitutionally protected liberty interest in avoiding involuntary administration of anti-psychotic drugs — an interest that only an essential or overriding state interest might overcome." 539 U.S. at 178-79, 123 S. Ct. at 2183 (quotation marks omitted). The Supreme Court instructed that, before considering whether a defendant may be involuntarily medicated to attain competency to stand trial, a district court should consider whether a defendant may be involuntarily medicated for an alternative reason — such as the danger that he poses to himself or others, or the fact that his refusal to take medication places his health at grave risk. Id. at 181-82, 123 S. Ct. at 2185.

Diaz, 630 F.3d at 1331.

However, if the defendant cannot be medicated for an alternative purpose, a court may order under Sell that he be involuntarily medicated to attain competency to stand trial, as long as a court finds these criteria satisfied:

16

> (1) the government has an "important" interest in going to trial; (2) involuntary medication would "significantly further" the governmental interest; (3) involuntary medication is necessary to further the governmental interest; and (4) involuntary medication is medically appropriate, "i.e., in the patient's best medical interest in light of his medical condition." Id. at 179–83, 123 S. Ct. at 2184–86. Given these requirements, the Supreme Court noted that such instances "may be rare." Id. at 180, 123 S. Ct. at 2184.

Id.

The government bears the burden of proving the factual findings underlying the Sell factors by clear and convincing evidence. Id.

        2. The Sell Factors Analyzed

First, the Court finds that involuntary medication may not be justified based upon any alternative reasons. Dr. Dorney so opined, and Judge Martin made the same finding, which was affirmed, in her 2009 order. See Dorney Rpt., Gov. Ex. 2 at 9; [Doc. 164 at 12–14].

Mr. Diaz challenges only one of the four Sell factors. He contends that the government has not shown that it has an important interest in going to trial. [Doc. 263 at 2]. Mr. Diaz's argument is that the government's failure to follow through with the continuation of his medication after he was restored to competency allowed him to relapse and has caused the trial to be delayed. [Id. at 3]. In making this argument, Mr. Diaz seems to be contending that the government's failure shows that it did not consider bringing Mr. Diaz promptly to trial to be an important interest.

17

As Judge Martin noted in her order in October of 2009, however, "[w]here the crime charged is serious, bringing a defendant to trial is important." [Doc. 164 at 14] (citing <u>Sell</u>, 539 U.S. at 180, 123 S. Ct. at 2184). In making the argument that the charges in this case are serious, the government points out that Mr. Diaz is charged with using and discharging a weapon in connection with the armed bank robberies for which he is indicted. [Doc. 262 at 17-18].[2] The government also points out that Mr. Diaz is charged in two counts with use of a firearm during a crime of violence, punishable by mandatory minimums of ten and twenty five years (for a second offense), with the possibility of life imprisonment. [<u>Id.</u> at 18]. "If convicted of all charges, [Mr.] Diaz could potentially spend the rest of his life in prison. At a minimum he would spend thirty-five years in federal custody." [<u>Id.</u>]

The government further points out that, in considering this first factor, courts should also consider special individualized factors, including (1) whether the defendant may receive substantial credit for his pre-sentence detention, and (2) whether, absent involuntary medication, the defendant may be subject to significant time in civil confinement. [<u>Id.</u>]. As for substantial credit,

---

[2] He is also charged with being a felon in possession of a firearm, a separate crime, which the government submits is a serious crime in itself.

18

although Mr. Diaz has been incarcerated for over ten years, there appears to be no dispute that he would be entitled to credit for this time already served, upon his conviction. See 18 U.S.C. § 3585(b). Furthermore, Mr. Diaz has already been convicted of these same offenses once before, after a non-jury trial before Judge Martin, although these convictions were later reversed based upon the inadequacy of his waiver of jury trial. Nevertheless, the evidence against him appears to be heavy, if not overwhelming, which counsel for Mr. Diaz acknowledged at the hearing. See [T. 61] (Mr. Lovell: "Just an overwhelming amount of evidence."). If convicted, his sentence will almost inevitably substantially exceed the amount of time he has already been incarcerated.

As for civil commitment, it seems unlikely that Mr. Diaz would be civilly committed as dangerous "as a result of mental illness." Judge Martin's 2009 Order discussed this issue and concluded that Mr. Diaz would unlikely be eligible for lengthy civil commitment. "[T]he Court cannot conclude that any threat Mr. Diaz may pose to society upon his release is 'a result of' his mental illness." [Doc. 164 at 19]. Her conclusion on this issue remains sound. See [id.]. Thus, the government interest in prosecution would not be substantially moderated by the possibility of such a civil confinement "that would diminish the risks that ordinarily attach to

19

freeing without punishment one who has committed a serious crime."
<u>Sell</u>, 539 U.S. 180, 123 S. Ct. at 2184.

Judge Martin found the first <u>Sell</u> factor met in her order in
2009, and this finding was affirmed on appeal by the circuit court.[3]
<u>Diaz</u>, 630 F.3d at 1335-36. Mr. Diaz has not suggested how the
passage of time, or any other pertinent considerations, may have
undermined this finding. The fact that the government failed to
ensure that Mr. Diaz's medications continued after he left
Springfield and was returned to this district does not demonstrate
that the government's interest in bringing Mr. Diaz to trial is less
important than it was when Mr. Diaz was initially charged. Mr.
Diaz's crimes were then and are now serious, and the government's
interest in prosecuting him for these crimes remains important,
satisfying the first <u>Sell</u> factor.

Mr. Diaz has not challenged the other <u>Sell</u> factors, although
the burden of proof remains with the government. <u>See Diaz</u>, 630 F.3d
at 1332. The second <u>Sell</u> factor is whether involuntary medication
will significantly further the government's interest. In making this
determination, the district court must consider (1) whether
medication is "substantially likely to render the defendant

---

[3] Indeed, the first <u>Sell</u> factor was not challenged on the
previous appeal, only the second and third factors. <u>See Diaz</u>, 630
F.3d at 1331.

competent to stand trial," and (2) whether the medication is "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Sell, 539 U.S. at 181, 123 S. Ct. at 2184-85.

On both of these issues, expert opinion testimony was received from Dr. Dorney. She testified that Mr. Diaz would be substantially likely to be restored to competency through the administration of antipsychotic medication on a regimen similar to what was previously prescribed. [T. 26-27]. She also opined that these antipsychotic medications would help him work with his counsel, and that they would be appropriate for the treatment of schizophrenia. [T. 27]; Gov. Ex 2. at 8. As for side effects, Dr. Dorney testified to a reasonable degree of medical certainty that involuntary antipsychotic medication is substantially unlikely to have side effects that will interfere significantly with Mr. Diaz's ability to work with his attorney. [T. 28-30]; Dorney Rpt., Gov. Ex. 2 at 8. There was no contrary expert testimony presented.

In addition to having examined Mr. Diaz, Dr. Dorney testified with the benefit of the records and reports from the prior competency and Sell hearings. In arriving at her opinion, she had available the forensic evaluation reports from 2009 of Drs. Pietz and Sarrazin arriving at the same medical opinions regarding the

21

efficacy of medication and the risks of side effects. See Dorney Rpt., Gov. Ex. 2 at 2. Her opinions are consistent with the conclusions reached in the earlier proceedings by Drs. Pietz and Sarrazin.

The third Sell factor is whether involuntary medication is necessary to further the government's interests. In that regard, the court must (1) find that any "alternative, less intrusive treatments are unlikely to achieve substantially the same results" and (2) "consider less intrusive means for administering the drugs." Sell, 539 U.S. at 181, 123 S. Ct. at 2185. Dr. Dorney's opinion was that less intrusive treatment other than medication would not be effective to reduce Mr. Diaz's psychiatric symptoms to the extent necessary to render him competent for trial. [T. 31-32]; see Dorney Rpt., Gov. Ex. 2 at 8. Dr. Dorney's testimony is supported by the testimony previously adduced at the Sell hearing before Judge Martin, which was analyzed and accepted by the court of appeals. See Diaz, 630 F.3d at 1335-36.

Likewise, less intrusive means of administration of medication would not be effective. Mr. Diaz has refused to take the medication. Mr. Diaz now also claims that while he was previously hospitalized he was "cheeking," or holding the medication against his cheek until he could expel it later, so as to avoid taking the medication and to deceive the providers into thinking he had taken it. Although Dr.

AO 72A
(Rev.8/82)

Dorney believes Mr. Diaz nonetheless would have obtained benefits from the medication even if he "cheeked" it, it is clear that steps will be necessary to ensure that the medication is received by Mr. Diaz and fully ingested. [T. 31-32].

The fourth Sell factor for determination is whether involuntary medication is medically appropriate, "i.e., in the patient's best medical interest in light of his medical condition." Sell, 539 U.S. at 181, 123 S. Ct. at 2185. In that regard, Dr. Dorney rendered the opinion that "antipsychotics are the treatment of choice for schizophrenics and are medically appropriate." Dorney Rpt., Gov. Ex. 2 at 8; see also [T. 23]. She further testified that most defendants such as Mr. Diaz are restored to competency with medication. [T. 36]. She estimated that the percentage of likely success was somewhere in the range of 70 to 80%, concluding: "So in looking at his history of restoration in the four- to six-month window, I think it's likely he will be restored to competency." [Id.]. Similarly, Judge Martin found after the hearing in 2009 that administration of the antipsychotic drugs was medically appropriate. [Doc. 164 at 31]. Presented with the evidence before me on the record in this case, including past history, I conclude that the administration of antipsychotic medication is appropriate and in Mr. Diaz's best interest.

## IV.
## Conclusion

Based upon the analysis set forth above, I conclude that Mr. Diaz is not competent to stand trial, in that he is presently suffering from a mental illness that renders him unable to assist properly in his defense. Pursuant to 18 U.S.C. § 4241(d), Mr. Diaz should be hospitalized for treatment in a suitable facility, preferably the United States Medical Center for Federal Prisoners in Springfield, Missouri, where he was previously treated, for an initial period of four months, and for such additional reasonable period as may be justified under § 4241(d)(2), for treatment to determine whether he may attain the capacity to permit the proceedings against him to go forward. Furthermore, consistent with the analysis of the factors under United States v. Sell pertinent to whether involuntary medication would be appropriate, I conclude that the government's motion to involuntarily medicate Mr. Diaz, [Doc. 227], should be **GRANTED.**

Accordingly, **IT IS REPORTED AND RECOMMENDED** that Mr. Diaz should be hospitalized for treatment in a suitable facility, preferably the United States Medical Center for Federal Prisoners in Springfield, Missouri, and that the medical facility should be **DIRECTED** to re-commence the medication of Mr. Diaz in accordance with the medical plan described by Dr. Dorney in her report and in

her testimony at the <u>Sell</u> hearing, and as deemed medically appropriate by the medical staff at the institution, taking into consideration Mr. Diaz's prior medical history and treatment plan. The medication may be administered involuntarily if Mr. Diaz refuses to accept the medication, and, in any event, it should be administered in a manner to ensure that Mr. Diaz receives and fully ingests the appropriate dosages. Once Mr. Diaz is restored to competency his medication should not be discontinued without Court order and should be maintained under the supervision of the United States Marshal Service and/or the detention facility to which he is returned upon such a finding of competency, pending trial or other disposition of the case.

It appearing that there are no further pretrial or discovery matters to bring before the undersigned as to this defendant, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.


**SO REPORTED AND RECOMMENDED**, this 12th day of June, 2014.


_**S/ E. Clayton Scofield III**_
E. Clayton Scofield III
United States Magistrate Judge

25